**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ALLAN AUSTIN, #K71358** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 19-cv-01335-SMY |
| | ) |
| **JOHN BALDWIN,** | ) |
| **DEANNA BROOKHART,** | ) |
| **DEREK HUNDLEY,** | ) |
| **VIPIN SHAH,** | ) |
| **C/O PIPER, and** | ) |
| **LACIE LIVINGSTON,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Allan Austin, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims violations of the First, Eighth, and Fourteenth Amendments and seeks monetary damages. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 1): Plaintiff was placed on crisis watch from October 16-26, 2018 for an attempted suicide. On October 21, 2018, while Correctional Officer Hundley was making rounds in crisis watch, Plaintiff felt like Hundley was

harassing him, became suicidal, and swallowed several pills. Hundley called for backup and Correctional Officers Deisher and Musgrave responded. Hundley sprayed a chemical agent in Plaintiff's face without warning, directed Plaintiff to turn around, kneel on the floor, and cuff up. Plaintiff complied with all of the orders and was not hostile or aggressive before or after Hundley entered his cell.

While Plaintiff was handcuffed, Hundley sprayed Plaintiff in the face with the chemical agent again until the entire canister was empty. Hundley asked Plaintiff for his pills, to which he responded there were no pills in the cell. Hundley directed Deisher and Musgrave to hold Plaintiff while Hundley conducted a body cavity search. Hundley inserted two or three fingers in Plaintiff's anus and moved them in a circular motion. Hundley then grabbed Plaintiff's penis and separated it from his testicles.

Plaintiff was later escorted to the healthcare unit ("HCU") and his vital signs were checked for a drug overdose. The nurse attempted to wipe the chemical agent off his face but it just smeared. She told him he needed to flush his eyes and take a shower to remove the chemical agent. Hundley then returned Plaintiff to his cell, which had not been cleaned. There was chemical agent on the walls, mattress, blanket, and safety smock. Plaintiff still had chemical agent on his face, ears, and hair. Plaintiff complained to Deisher and a mental health professional and both stated they would tell Hundley. Because Plaintiff was on crisis watch, he was not allowed any property (e.g. soap, towels) and could not clean it himself. Hundley refused to approve the cell to be cleaned. Correctional Officers and the Lieutenant on the second shift (3 pm – 7 am) refused to clean the cell, change the mattress, blanket, and smock, or allow him to shower. On the third shift (7 am – 3 pm), he was finally allowed to take a shower and provided another mattress, blanket, and smock.

2

Hundley wrote Plaintiff a disciplinary report for self-injurious behavior. He was found guilty and received 45 days of segregation, 3 months of C-grade, 6 months of contact visit restriction, and lost 15 days of good time. This violates the settlement agreement in *Rasho v. Baldwin* which prohibits punishment for self-injurious behavior by seriously mentally ill inmates.

While on crisis watch Plaintiff asked Deisher, Musgrave, and other correctional officers to make a PREA (Prison Rape Elimination Act) call but they refused his request. After he returned to segregation on October 26, 2018, other officers refused his request to make a PREA call. He used his once a month call to call the PREA hotline on November 2, 2018.

Internal Affairs Officer Piper commenced a PREA investigation on November 4, 2018. Piper told Plaintiff that if he was lying, he would get a year in segregation, but if he withdrew his claim, he would only get one month in segregation. Piper and Lt. Phillips escorted Plaintiff to the HCU for a rape kit examination conducted by Dr. Shah on November 5, 2018. Dr. Shah asked Plaintiff investigative questions that made him feel uncomfortable, particularly with Piper and Lt. Phillips, a female, present. Plaintiff refused to answer any more questions and asked Dr. Shah if he was qualified to do the examination. He also told Dr. Shah that he should not be examined in front of a female correctional officer. He requested an examination by an outside source in a confidential setting. Piper insisted that Plaintiff continue answering Dr. Shah's question. Dr. Shah, Piper, and Lt. Phillips tried to force Plaintiff to sign a refusal.

After the filing of the PREA complaint and grievances, Hundley began to retaliate against Plaintiff by harassing, intimidating, and threatening him. While Plaintiff was on crisis watch a second time, Hundley harassed, intimidated, and threatened him by entering his crisis cell for no reason while five correctional officers stood guard outside the cell. Hundley asked Plaintiff if he had any more pills because he had a new can of mace to use on him.

Plaintiff attempted to seek justice but was prevented due to a systemic problem of rubber-stamping. Defendants Baldwin, Brookhart, and Livingston reviewed Plaintiff's grievances and denied and/or signed off on the denials, but failed to independently investigate his claims.

Based on the allegations in the Complaint, the Court finds it convenient to designate the following claims in this *pro se* action:

- Count 1: Eighth Amendment excessive force claim against Hundley for spraying Plaintiff in the face with a chemical agent and assaulting him.

- Count 2: Eighth Amendment conditions of confinement claim against Hundley for leaving Plaintiff in a cell with a chemical agent on his face and the walls, mattress, and blanket were also covered with a chemical agent.

- Count 3: Fourteenth Amendment claim and/or a violation of the *Rasho* settlement agreement against Hundley for writing Plaintiff a ticket for self-injurious behavior resulting in disciplinary action.

- Count 4: First Amendment retaliation claim against Hundley for harassing, intimidating, and threatening Plaintiff in response to him filing a PREA complaint and grievances.

- Count 5: Eighth Amendment deliberate indifference claim against Piper and Dr. Shah for denying Plaintiff medical care for injuries from the assault by Hundley.

- Count 6: Fourteenth Amendment due process claim against Piper and Dr. Shah for failure to investigate the assault by Hundley and failure to follow the PREA mandate to fully investigate Plaintiff's allegations of sexual assault.

- Count 7: Fourteenth Amendment equal protection claim against Piper and Dr. Shah for failure to investigate the assault by Hundley and failure to follow the PREA mandate to fully investigate Plaintiff's allegations of sexual assault.

- Count 8: First Amendment retaliation claim against Piper and Dr. Shah by using threats and other tactics to prevent Plaintiff from pursuing medical treatment and a rape kit examination in response to him filing a PREA complaint.

> Count 9: First and/or Fourteenth Amendment claim against Baldwin, Brookhart, and Livingston for failing to investigate Plaintiff's claims in his grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## **Preliminary Dismissals**

Plaintiff refers to individuals in his statement of claim who are not named as defendants, including correctional officers Deisher and Musgrave. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Therefore, claims against any individuals not identified as defendants in the case caption are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding *pro se* Complaint failed to state a claim against individual mentioned in body of Complaint but not specified in the caption).

## **Discussion**

### **Count 1**

The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). "Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal citations and quotation marks omitted). The allegations in the Complaint are sufficient to proceed on the excessive force claim in Count 1 against Hundley.

5

### Count 2

Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Two elements are required to establish a constitutional violation. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 842.

Plaintiff claims he was placed in a cell where the walls, mattress, and blanket were covered with a chemical agent. Ordinarily, a short-term deprivation of access to facilities or sanitary supplies would not rise to the level of a constitutional violation. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986). However, Plaintiff had allegedly just been sprayed with a significant quantity of mace, and was in physical distress. Under these circumstances, placing him in a cell that lacked any means for him to clean the chemical residue from his face and body could constitute cruel and unusual punishment. Therefore, Plaintiff's allegations are sufficient to proceed on the unconstitutional conditions of confinement claim in Count 2 against Hundley.

### Count 3

An inmate who wishes to seek to enforce the *Rasho* settlement agreement must bring those claims in the Central District of Illinois, where the case was litigated. *See Rasho*, No. 07-cv-1298-MMM, 2018 WL 2392847 at *6 (C.D. Ill., May 25, 2018) (stating that the "Settlement Agreement

6

allows for the Plaintiffs to seek relief from this Court if there is a dispute as to whether or not the Defendants are in substantial compliance."). Accordingly, Plaintiff's claim pertaining to the *Rasho* settlement agreement will be dismissed.

Additionally, Plaintiff fails to state a claim against Hundley because a disciplinary ticket, even if falsely issued, will not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). A court analyzing a due process claim in the context of prison disciplinary hearings must consider: (1) whether there was a protected interest at stake that necessitated due process protections; and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Zinermone v. Burch*, 494 U.S. 113, 125 (1990).

Plaintiff's allegations that he received 45 days of segregation, 3 months of C-grade, and 6 months of contact visit restriction do not implicate a liberty interest that necessitated the protections demanded by due process. There is no protected liberty interest in demotion to C-grade status or loss of visitation privileges. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges); *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003) (withdrawal of visitation privileges for a limited period of time as a disciplinary measure is not a dramatic departure from accepted standards for conditions of confinement). Moreover, Plaintiff's placement in segregation for a short duration without allegations of conditions of that confinement that are "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" does not implicate a protected liberty interest. *See Beaman v. Pollard*, 711 F. App'x 794 (7th Cir. 2018) (four months in segregation does not implicate a protected liberty interest). *Hardaway v. Meyerhoff*, 734 F.3d 740, 745 (7th Cir. 2013) (no liberty interest in avoiding 182 days'

7

segregation); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (noting that 90 days' segregation was "still not so long as to work an atypical and significant hardship"); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence").

While loss of good time credits implicates a liberty interest, claims that imply that an inmate's good time credits should be restored cannot be pursued in a § 1983 action until the good time is restored through other means. *Heck v. Humphrey,* 512 U.S. 477, 480-81 (1994); *McAtee v. Cowan,* 250 F.3d 506, 508 (7th Cir. 2001) *See also Edwards v. Balisok*, 520 U.S. 641 (1997) (§ 1983 claim for damages is barred if it would imply the invalidity of a disciplinary decision revoking good-conduct credit, unless disciplinary action has been reversed).  Plaintiff has not alleged that the good time credit has been restored.

For these reasons, Plaintiff Count 3 will be dismissed for failure to state a claim.

### Counts 4 and 8

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).  Plaintiff alleges Hundley retaliated against him for exercising his right to file grievances and a PREA complaint by harassing and threatening him.  He claims Piper and Shah used threats and other tactics to prevent him from pursuing medical treatment and a rape kit examination as retaliation for his PREA complaint.  "A complaint states a claim for retaliation

8

when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). At this stage, Plaintiff states a plausible retaliation claim in Count 4 against Hundley and in Count 8 against Piper and Dr. Shah.

**Count 5**

An Eighth Amendment claim based on the denial of medical care requires a plaintiff to show that (1) his medical condition was sufficiently serious, and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). The allegations in the Complaint are sufficient to proceed on the deliberate indifference claim in Count 5 against Piper and Dr. Shah for the denial of medical treatment for injuries from the alleged assault. *See Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996) (failure to obtain medical assistance for an inmate who has been assaulted may constitute deliberate indifference to a serious medical need).

**Count 6**

With respect to the alleged failure to investigate Plaintiff's allegations of assault, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1995). In fact, the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982). Prison officials thus incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (inmate's claim that prison officials failed to investigate his grievances that mailroom and security staff was stealing his property was indisputably meritless because inmate did not have a due process right to an investigation). Because "inmates do not have a due process right to have their claims

investigated at all," Plaintiff does not state an adequate due process claim for failure to investigate his alleged assault. *See Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017); *Wilkins v. Illinois Dep't of Corr.* No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009).

With respect to the alleged failure to follow the PREA mandate to fully investigate Plaintiff's allegations of sexual assault, it is true that prison officials have a duty under the Constitution to protect prisoners from assault. *Farmer v. Brennan*, 511 U.S. 825 (1994). However, the Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "Further, PREA does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements." *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017) (internal citations omitted); *see also J.K.J. v. Polk Cty.*, No. 15-cv-428-WMC, 2017 WL 28093, at *12 (W.D. Wis. Jan. 3, 2017) ("[T]here is no private right of action under the PREA."). Accordingly, Count 6 will be dismissed for failure to state a claim.

**Count 7**

To state a claim for unconstitutional discrimination, Plaintiff must show "that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005). "An inmate's subjective belief that he was unfairly treated, without more, does not state a viable equal protection claim." *Shelton v. Melvin*, No. 17 CV 50045, 2017 WL 951241, at *5 (N.D. Ill. Mar. 10, 2017) (citing *Huebschen v. Dep't of Health and Soc. Serv.*, 716 F.2d 1167, 1171 (7th Cir. 1983)). Here, Plaintiff does not allege any facts in support of

a discrimination claim. Instead, he makes only a conclusory allegation that Piper and Dr. Shah violated equal protection under the Fourteenth Amendment by depriving him of a proper rape kit examination, which is insufficient to state a claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"); *Twombly*, 550 U.S. at 570 (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."). Therefore, Count 7 will be dismissed.

### Count 9

"Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by person who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). Additionally, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Plaintiff fails to state a claim against the grievance officials for allegedly failing to investigate the claims in his grievances. Therefore, Count 9 will be dismissed.

### Disposition

Counts 1, 2, and 4 will procced against Hundley and Counts 5 and 8 will proceed against Piper and Dr. Shah. Counts 3, 6, 7, and 9 and Baldwin, Brookhart and Livingston are **DISMISSED** without prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** them as Defendants.

The Clerk shall prepare for Hundley, Piper, and Dr. Shah: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  October 13, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.